P. J. MILLER, Johnnie Dexter and Perry Bruner, who sue individually on their own behalf and as President, Secretary-Treasurer and Wage Committeeman, and on behalf of the class of persons constituting United Glass and Ceramic Workers of North America, AFL–CIO, Kingsport Local No. 117, a local labor union organized as an unincorporated association, with its office and principal place of business in Kingsport, Tennessee, Appellants,

v.

BLUE RIDGE GLASS CORPORATION, a corporation maintaining an office and agents in the City of Kingsport, Tennessee, Appellee.

No. 13573.

United States Court of Appeals
Sixth Circuit.

March 20, 1959.

John S. McLellan, Jr., Kingsport, Tenn., and Eastman Portrum, Rogersville, Tenn., for appellants.

Edwin O. Norris, and Ernest F. Smith, Kingsport, Tenn.; Penn, Hunter, Smith & Davis, Kingsport, Tenn., on the brief, for appellee.

Before ALLEN, Chief Judge, SIMONS, Circuit Judge, and KENT, District Judge.

PER CURIAM.

This is an appeal from a judgment of the District Court dismissing a class action by three appellants against appellee, Blue Ridge Glass Corporation, their former employer. The dispute is as to vacation pay for 1955 alleged to be due appellants and others similarly situated under a collective bargaining

agreement in effect from January 30, 1955, to January 28, 1956. After the usual negotiations concerning the expiration of this agreement the parties failed to execute a new contract and a strike occurred January 28, 1956. It is stipulated that since then appellants have not worked for appellee.

In 1947 appellee executed a collective bargaining agreement with the Kingsport Flat Glass Workers Association. June 24, 1949, a new agreement was executed between appellee and United Glass and Ceramic Workers of North America, Local 117, AFL-CIO. The old agreement, which expired June 24, 1949, provided for vacation pay. Under the new agreement, effective June 25, 1949, a new vacation pay provision came into effect. The original contract contained a term practically identical with that in each subsequent contract, including the one in suit dating from January 30, 1955, to January 28, 1956, namely, that the vacation pay for each employee for each year was a percentage of the "gross earnings for the preceding calendar year." The terms of the contract here involved are shown in Article XV of the January 30, 1955, agreement. The pertinent paragraph, 2, briefly summarized, is as follows: For one year's service performed by November 30 of the current year if employee has worked from February 1 to November 30 of the current year and at least 500 hours the preceding calendar year, he receives one week's vacation. Pay is 2% of the earnings of the preceding calendar year, or at least $25.00. An employee having worked two years or more receives at least 40 hours pay at average rate. In paragraphs 3 and 4 proportionate vacation pay is fixed for employees who have had longer service.

Of necessity vacations were staggered throughout the year in order to sustain the level of appellee's production. The contract expressly provided that vacation scheduling should not interfere with plant operations. Vacation pay checks were prepared by machine early in each year and all dated as of the day of preparation. The checks were not executed by appellee until given to the employees.

The matter in dispute is whether the vacation pay received in 1955 was for 1954 or 1955. Appellants claim that it was for 1954, hence appellee owes them vacation pay for 1955. Appellee claims that the vacation payment in 1955 was for 1955, hence it owes appellants nothing.

Appellants' contention relies on two principal points. First, since Article XV, paragraph 2, states that the vacation pay in the current year is based on the earnings of the previous year, the vacation pay, appellants claim, is for the previous year. Concretely, since the vacation pay in 1955 was based on the gross earnings of 1954, they urge that particular pay was for 1954 and appellee still owes vacation pay for 1955. Second, appellee's income tax return filed in 1956 for the year 1955 made a deduction for vacation pay to be paid in 1956. That deduction, appellants urge, represents vacation pay for 1955 and supports the contention that vacation payments made in 1955 were for the year 1954.

In answer to the first contention appellee presented the following evidence: The original union agreement with the Kingsport Association required vacation pay through June 24, 1949. It was paid when the agreement expired, hence it was paid for the period through June 24, 1949. An adjustment was made under the new union agreement with Local 117 and appellee paid the balance of vacation pay in 1949 so that at the end of 1949 appellants had received vacation pay in full for that year. In each successive year similar complete vacation payments were made. It is conceded that, with the exception of certain employees covered by stipulation, the conditions essential to the receipt of vacation pay for 1955 were fulfilled in 1955 by each member of the class. Hence appellee urges that the vacation pay received in 1955 by the employees was for 1955.

An example of this situation is Exhibit 5, Data Concerning Vacation Pay of Production Employees, which sets forth the vacation pay statistics concerning Johnny Dexter, one of appellants, as follows:

Date Hired: 7-6-43
Last Day Worked: 1-27-56
Kingsport Flat Glass Workers Association

| Vacation 1948 | Date Paid | Vacation Hours Paid | Gross Amount Paid |
|---|---|---|---|
| | 8-7-48 | 40 | $48.00 |
| To June 25, 1949 | | | |
| Vacation 1949 | 4-2-49 | 40 | $50.80 |
| June 25, 1949—C. I. O. Local 117 | | | |
| Vacation Adjustment | | | (Adjusted Gross Amount) |
| | 8-17-49 | 40 | $75.09 |
| Vacation 1950 | 6- -50 | 80 | $126.74 |
| Vacation 1951 | 6- -51 | 80 | $154.25 |
| Vacation 1952 | 6- -52 | 80 | $132.33 |
| Vacation Taken 1953 | 6-17-53 | 80 | $130.40 |
| Vacation Taken 1954 | 6-30-54 | 88 | $160.16 |
| Vacation Taken 1955 | 4-14-55 | 96 | $179.52 |

■ This statement was typical of other employee accounts presented in evidence. We deduce that the last payment by Kingsport Flat Glass Corporation made to June 25, 1949, was for the 1949 vacation pay, that the vacation pay adjustment made August 17, 1949, under the new contract with AFL-CIO Local 117 was for the year 1949. Hence, the vacation pay in 1950 was for the year 1950 and through subsequent years for each year in which made. Likewise vacation pay during the year in question, 1955, was for the year 1955.

■ As to the estimate of vacation pay embodied in a deduction in appellee's income tax report for 1955, filed in 1956 while employees were on strike, appellants' contention that this estimate constituted an admission of liability for the amounts involved herein has no merit. The permission to accrue anticipated expenses for income tax purposes is granted under the Internal Revenue Regulations, Revenue Ruling 57-325, IRB 1957-27, P-H Fed. Tax Service Section 11600 (1958), "Accrual of Vacation Pay," page 11229. This ruling declares that "where an agreement with a union provides that employees who work not less than a specified number of days during the year will receive a vacation with pay the following year, or pay in lieu of vacation, a reasonable estimate for vacation pay is deductible by an employer on the accrual basis in the year the qualifying services are completed. It is not necessary to postpone the accrual till the following year when the vacation is taken, or the pay received." This ruling simply authorizes deduction of a reasonable estimate in the year the qualifying services are completed. The ruling specifically applies to a case like this where the contract provided that part of the qualifying services take place in the year preceding the year in which the vacation with pay is to be received by the employee. As to the particular deduction made in this case, it was prepared in 1955 and filed in 1956 in spite of the strike because there was always a possibility that the strike would end and the vacation payments would continue. As the strike did not end and the men were replaced, a later adjustment was made and appellee in its

1956 income tax report changed the deduction to income and paid a tax thereon.

Bearing in mind the fact that the contract expressly recognized the flexibility of the vacation schedule as being controlled by the employer, we conclude that the contract was not ambiguous and that appellee operated according to its terms. Since appellants stipulated that they had not worked during the period from February 1 to November 30 of 1956, the argument that the employees were engaged in a legal economic strike, held the status of employees, and from a legal standpoint were working for appellee during that period, needs only to be stated to demonstrate its fallacy. The District Court's finding that appellee had paid full vacation pay for 1955 is clearly supported by the evidence.

Other questions raised have been considered and found unnecessary to discuss.

The judgment of the District Court is affirmed.