Claude E. SMITH et al., etc., Plaintiffs,

v.

KINGSPORT PRESS, INC., Defendant.

Norman F. CARTER et al., etc., Plaintiffs,

v.

KINGSPORT PRESS, INC., Defendant.

Earl M. DERRICK et al., etc., Plaintiffs,

v.

KINGSPORT PRESS, INC., Defendant.

Carl F. KING et al., etc., Plaintiffs,

v.

KINGSPORT PRESS, INC., Defendant.

Civ. A. Nos. 1666–1669.

United States District Court
E. D. Tennessee,
Northeastern Division.

Sept. 16, 1964.

644

McLellan & Wright, Kingsport, Tenn. (John S. McLellan and Donald E. Wright, Kingsport, Tenn., of counsel), and Tucker & Erwin, Erwin, Tenn. (Dennis Erwin, Erwin, Tenn., of counsel), for plaintiffs.

Hunter, Smith, Davis, Norris & Waddey, Kingsport, Tenn. (Ernest F. Smith, Edwin O. Norris and Wendal D. Jackson, Kingsport, Tenn., of counsel), for defendant.

NEESE, District Judge.

These are class actions by officials of various labor unions on behalf of themselves and others similarly situated. The plaintiffs claim that the defendant breached its collective bargaining agreements with its affected employees by its refusal to pay such employees vacation pay on the fourth Friday in March, 1963. The four actions were tried together without a jury on May 25–26, 1964, in-

asmuch as the pertinent provisions forming the bases of these actions, with reference to vacation pay, conditions of eligibility for such pay, and the date of receipt of vacation payments, are substantially the same in the four contracts. Final briefs and supporting data have now been filed by the parties, and the Court has carefully considered the issues presented.

The Court has previously determined it has jurisdiction under 28 U.S.C. § 1441 (b) and 29 U.S.C. § 185(a) to make this adjudication. Smith v. Evening News Asso. (1962), 371 U.S. 195, 199, 83 S.Ct. 267, 9 L.Ed.2d 246; see also General Drivers Warehousemen and Helpers, Local Union No. 89 v. Riss and Co. (1963), 372 U.S. 517, 83 S.Ct. 789, 791, 9 L.Ed.2d 918, 921 [4].

▮ Provisions for vacation pay have been included in the respective collective bargaining agreements of the parties here involved for a period of nineteen years, commencing March 4, 1944 and finally expiring on January 31, 1963. " * * * A vacation with pay is in effect additional wages. It involves a reasonable arrangement to secure the well being of employees and the continuance of harmonious relations between employer and employee. * * * " In re Wil-Low Cafeterias, Inc., C.A.2d (1940), 111 F.2d 429, 432 [3]. Rights to vacation pay are given only to employees. In the absence of a contrary contractual provision, former employees are not entitled to such pay. The voluntary termination of the employment relation by the employees serves to terminate also any unaccrued rights the employees might otherwise have had to vacation pay. See and cf. Edelstein v. Duluth, M. & I. R. R. Co. (1948), 225 Minn. 508, 31 N.W.2d 465. But, if employees have met all the requisite conditions to become eligible for vacation pay for a given year, they have a vested right in such payments as additionally earned wages and are entited to receive such pay even after they may have been involuntarily separated from their employment because of lack of work. Textile Workers Union of America Local No. 513 v. Brookside Mills (1958), 203 Tenn. 71, 309 S.W.2d 371, (1959) 205 Tenn. 394, 326 S.W.2d 671.

To become entitled to vacation pay for a given year, the employees here involved were required by the contracts of their unions with their employer to:

(a) have completed a minimum of one year's employment with their employer on the first Saturday in March;

(b) have worked a prescribed minimum aggregate of time during the period of twelve months immediately preceding the first Saturday in March; and

(c) be " * * * on the payroll * * " of their employer on the fourth Friday in March.

These vacation pay provisions were first written into agreements of the pertinent parties for the contract year which commenced on March 9, 1944. This was in wartime, and the contracts provided that the vacation pay provisions were subject to the approval of the War Labor Board. It was further provided, however, that if the defendant was not permitted to grant vacations in 1944, it would pay each of its employees who qualified under the plan a lump sum equivalent to the vacation allowance. The defendant made vacation payments to its qualifying employees thereunder on December 22, 1944.

Vacation payments were next made by the defendant to its qualifying employees on July 20, 1945. Thereafter, in each of the seventeen ensuing years from 1946 through 1962, inclusive, the defendant made annual vacation payments to its qualifying employees who met the aforementioned criteria on the fourth Friday in March of each of those years. Such payments for 1960, 1961 and 1962 were made under the most recent bargaining agreements involved, commencing February 1, 1960 and expiring on January 31, 1963. The last vacation payments these employees received from the defendant were paid on March 23, 1962.

The bargaining parties were unable to agree on new contracts or renewals of existing contracts by January 31, 1963.

The defendant's employees continued to work until March 11, 1963, however, without collective bargaining agreements [1] while negotiations continued.

An economic strike was commenced by the defendant's employees on March 11, 1963, such employees voluntarily terminating their employment with the defendant on that date. None of the plaintiffs or those in whose behalf these actions were instituted have worked for the defendant since that date; thus, none were working on March 22, 1963, the fourth Friday in March of that year.

It is contended for the workers that, under these circumstances, they had worked the required periods of time; were engaged on March 22, 1963 in a legal economic strike; still occupied on that date the status of employees of this defendant; and, from a legal standpoint, were really working for the defendant on the fourth Friday in March, 1963, so as to supply the final requisite for vacation pay for the vacation year 1963.

■ Ordinarily, courts deny employees the right to vacation pay where the employees separate themselves voluntarily from their employment, as where they utilize the weapon of an economic strike. Pellett v. Ton Tex Corp. (1948), Sup.App.T., 77 N.Y.S.2d 900; Bondio v. Joseph Binder, Inc., La.App. (1946), 24 So.2d 390, both cited at 30 A.L.R.2d 356–357. The purpose of a vacation is to give rest and relaxation to the workers, and a paid vacation contemplates a continuance of employment. Anno.: Labor—Vacation Pay Clause, 30 A.L.R.2d 357, section 5, citing Bondio, supra; [2] see also In Re Wil-Low Cafeterias, Inc., supra.

■ This Court will construe the collective bargaining agreements being considered here with the same liberality which is accorded other agreements in order to accomplish their evident purpose, which ordinarily is to protect both the

defendant and its employees. Mastro Plastics Corp. v. N. L. R. B. (1956), 350 U.S. 270, 76 S.Ct. 349, 359, 100 L.Ed. 309, 321 (headnote 9), rehearing denied (1956), 351 U.S. 980, 76 S.Ct. 1043, 100 L.Ed. 1495. The methods employed by the parties in connection with prior and similar agreements will be accorded great weight. Burton v. Oregon-Washington R. and Nav. Co. (1934), 148 Or. 648, 38 P.2d 72. Words used in the contracts will be given their ordinary meaning. Holland v. Morrison, C.A.Tenn. (1931), 14 Tenn.App. 73, certiorari denied (1931). The instruments will be interpreted " * * * in a way that appears to be justified by the language used as well as by the construction put upon same by the parties themselves. * * * (I)f the language of the contract is clear in its meaning and the employee fails to bring himself within its terms, no court should rewrite the contract. * * * " Textile Workers Union of America v. Brookside Mills, supra, 309 S.W.2d at pages 373, 374.

■ There is nothing ambiguous about the vacation pay clauses in these agreements. Their evident purpose is to protect the rights of the workers to vacation pay if they qualify for it and to protect their employer if they do not. It is undisputed that all of the members of the classes represented by these plaintiffs had performed all the qualifying services for the defendant required by the first two criteria laid down by the parties for vacation payments. Had the employees continued on the compensable pay list of those entitled to receive compensation from the defendant on the fourth Friday in March, 1963, each might now claim an implied agreement for vacation pay for 1963 based on the methods employed by the parties in connection with the agreements covering the annual vacation years 1944 through 1962, inclusive. The employees chose, as they

1. Except that, on February 1, 1963, the contract of the defendant and the Kingsport Pressmen's Union, Local No. 336, was extended to, and expired on, February 10, 1963.

2. But see and cf. Textile Workers Union of America v. Parish Fabric Mills, Inc. (1952), 18 N.J.Super. 421, 87 A.2d 458, affirmed (1952), 22 N.J.Super. 381, 92 A.2d 40.

had a right to do, to terminate their employments with the defendant before the fourth Friday in March, 1963 for the purpose of employing their weapon of an economic strike.

These employees were not working on the fourth Friday in March, 1963; therefore, the argument that they were then engaged in a legal economic strike, held the status of employees, and from a legal standpoint were working for the defendant on that date " * * * needs only to be stated to demonstrate its fallacy. * * * " Miller v. Blue Ridge Glass Corporation, C.A.6th (1959), 264 F.2d 634 [2].

In the connotation that the employees were listed on March 22, 1963 on the payroll records which the defendant maintains, on which appeared the names and recorded information concerning all its employees who received pay during the calendar year 1963, the employees were " * * * on the payroll * * * " of the defendant on the fourth Friday in March, 1963. Listed on this master payroll of the defendant also, however, are the names of some of its former employees who retired, were discharged, or died during the calendar year involved. This could not be the "payroll" the contracting parties contemplated when they made their agreements. Rather, this Court is of the opinion and so finds and concludes that the parties in their contracts contemplated at that time the defendant's payroll in its ordinary sense, viz., "A pay master's list of those entitled to receive compensation * * * " 3 on the fourth Friday in March of each year involved.

It is tenuous to contemplate that this employer, in agreeing to vacation pay to its qualifying employees and, thus, to secure their well being and the continuance of harmonious relations with them, would have entered into an unreasonable arrangement whereby it would pay such employees hundreds of thousands of dollars in additional wages on a date when harmonious employer-employee relationships no longer existed. Neither can the Court conceive that an employer, so versed and experienced in industrial relations, would have entered into agreements which would have enabled its employees to receive twenty-annual vacation payments in a period which included only nineteen annual vacations. These anomolies would follow if the contracts under consideration were construed by the Court in the manner now urged by the workers.

The language of these agreements is clear in its meaning,[4] and the employees having voluntarily acted so as to exclude themselves from its terms with regard to vacation pay, are not entitled to any of the relief sought in their complaints.

The clerk will, accordingly, forthwith prepare, sign and enter orders dismissing each of the complaints herein.

---

3. Webster's New International Dictionary, 2d Ed., p. 197.

4. The vacation clause in the contracts of March 9, 1944 included, for example, a specific reference to vacation pay for " * * * this year * * * ", i. e., 1944.