366 F.2d 416
 Claude E. SMITH, Richard Ayers, Fred Gray, Cecil Yokley,
individually and as President, Vice President,
Secretary-Treasurer and Recording Secretary of and on behalf
of the class of persons constituting Kingsport Printing
Pressmen and Assistants' Union, Local No. 336, Plaintiffs-Appellants
v.
KINGSPORT PRESS, INC., Defendant-Appellee.
Norman F. CARTER, Robert Arley Gillian, Ellis Paul Burke and
Carl Lisic, individually and as President, Vice President,
Financial Secretary and Recording Secretary of and on behalf
of the class of persons constituting International
Association of Machinists, Progressive Lodge No. 1694,
Plaintiffs-Appellants
v.
KINGSPORT PRESS, INC., Defendant-Appellee.
Earl M. DERRICK, Carroll T. Stark, Lowery T. Underhill and
Helen H. Barbsom, individually and as President, Vice
President, Secretary-Treasurer and Recording Secretary of
and on behalf of the class of persons constituting Bindery
Workers' Union Local 84, Plaintiffs-Appellants
v.
KINGSPORT PRESS, INC., Defendant-Appellee.
Carl F. KING, Jefferson W. Frazier, Vincent L. Darden and
John R. Welch, Jr., individually and as President, Vice
President, Treasurer and Secretary of and on behalf of the
class of persons constituting Local No. 175, Electrotypers
Union, Plaintiffs-Appellants
v.
KINGSPORT PRESS, INC., Defendant-Appellee.
 Nos. 16246-16249.
 United States Court of Appeals Sixth Circuit.
 Sept. 28, 1966.
 
 1
 John S. McLellan, Kingsport, Tenn., and Dennis Erwin, Erwin, Tenn., Lewis R. Hagood, Kingsport, Tenn., on brief; McLellan, Wright & Hagood, Kingsport, Tenn., Tucker & Erwin, Erwin, Tenn., of counsel, for appellants.
 
 
 2
 Edwin O. Norris, Kingsport, Tenn., Ernest F. Smith, Wendal D. Jackson, Kingsport, Tenn., on brief; Hunter, Smith, Davis, Norris & Waddey, Kingsport, Tenn., of counsel, for appellee.
 
 
 3
 Before EDWARDS, Circuit Judge, CECIL, Senior Circuit Judge, and KENT, District Judge.[1]
 
 
 4
 KENT, District Judge.
 
 
 5
 These are class actions brought by the plaintiffs-appellants who are officials of the various labor organizations which had collective bargaining agreements with the defendant, Kingsport Press, Inc., prior to March, 1963. Each action was brought under the provisions of Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. 185. Each of the actions was originally commenced in the state courts of Tennessee and each was thereafter removed by the defendant to the United States District Court for the Eastern District of Tennessee. Each action was instituted for the purpose of obtaining, for the class of employees represented by the respective officers, the vacation pay which it is claimed was due and payable on March 23, 1963, under the term of the collective bargaining agreements in effect during the period for which the employees had worked prior to that date. Each of the collective bargaining agreements in question expired on January 30, 1963.
 
 
 6
 While attempting to negotiate the terms of new collective bargaining agreements the employees in question continued to work until they went out on strike on March 11, 1963. The court is advised that the strike continues to this date. (The date being the date on which the arguments were had in the cases which are now before us.) By its terms each of the collective bargaining agreements provided that vacation pay was due and payable on March 23, 1963, subject to certain conditions set forth in the agreements. In each case the district court concluded that the defendant was not liable for payment of the vacation pay as provided in the collective bargaining agreements because the employees went on strike on March 11, 1963, and continued on strike thereafter. The district court concluded that the employees in question had voluntarily terminated their employment as of the date of the commencement of the strike. 233 F.Supp. 643, 646.
 
 
 7
 The facts relative to the contracts in question, the contracts of earlier years, and the current disputes between the parties are discussed at length in the district court opinion. In essence we are asked in this appeal to construe language in the collective bargaining agreements which provide in part as follows:
 
 
 8
 'Section 1. Vacations with pay will be granted as follows:
 
 
 9
 'Scetion 4. To receive this vacation allowance a member must be
 
 
 10
 a. On the payroll on the Fourth Friday in March;
 
 
 11
 b. Must have worked at least 40 full weeks during the 52 weeks immediately preceding the first Saturday in March. By a full week's work is meant the time the employee is scheduled to work throughout any given week.
 
 
 12
 c. An employee's status on the first Saturday in March will be used to determine his weekly rate and his seniority.'
 
 
 13
 The record establishes that each of the employees in question had been 'employed for one year on the first Saturday in March.' Each of the employees in question had worked at least 40 full weeks during the 52 weeks immediately preceding the first Saturday in March.
 
 
 14
 The basic issue in these actions is whether the employees in question were 'on the payroll on the fourth Friday in March.' Admittedly, all of the employees in question were employed by the defendant on the first Saturday in March, 1963, but the strike in which the employees in question were engaged commenced on the 11th day of March, 1963, and none of the employees in question were actually working on the 22nd day of March, 1963, which was the fourth Friday in March. The appellee did not pay the vacation pay as provided in the collective bargaining agreements to any of the employees who were on strike on March 22, 1963. There is nothing in the record before us which would have permitted the district court to conclude that any of the employees on strike had resigned and nothing which would permit the conclusion that a replacement had been employed by the appellee to fill the position of a striking employee as of March 22, 1963.
 
 
 15
 The Labor Management Relations Act of 1947, 29 U.S.C.A. 152(3) provides:
 
 
 16
 'The term 'employee' shall include any employee, * * * and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute * * *.'
 
 
 17
 The provisions of this section seem to be completely dispositive of the issue as to whether or not the plaintiffs-appellants were employees on the date in dispute.
 
 
 18
 Thus, we have remaining the principal issue, i.e., whether the employees in question were 'on the payroll.' Obviously, alternative terms could have been used in the collective bargaining agreement. The most obvious of which would have been 'on the active payroll' or 'actually working on the fourth Friday in March.' The definition of possible alternatives is discussed in somewhat greater detail in the arbitrator's decision in Springfield Foundry, 14 L.A. 1017. Another definition utilized by an arbitrator is found in West Virginia Paper Company, 15 L.A. 742 (1952), wherein the arbitrator stated. 'The true intent of the words, 'being on the payroll' is usually intended to cover employees who are on the regular roster of employees who are accumulating seniority.' Dumphy Boat Company, 13 L.A. 880 (1950) is another case where the facts were somewhat similar to the one before us. In that action the arbitrator concluded the words 'on the payroll' meant that a person employed by another remains on the payroll of the employer until his employment has been finally and definitely terminated.
 
 
 19
 The defendant-appellee has cited cases which it is claimed are contrary to those discussed above, but an examination of the facts in each case so cited and an examination of the terms of the agreements in question in each case so cited demonstrates that the decisions are not contrary to the cases to which attention has been called previously. See Austin-Western Co., 2 L.A. 570; Whittet-Higgins Co., 15 L.A. 13; Ohringer Home Furniture Co., 33 L.A. 477.
 
 
 20
 The district court in its opinion and the appellee in its argument rely upon Miller v. Blue Ridge Glass Corp., 264 F.2d 634 (C.A.6, 1959). An examination of the opinion of the court in Miller v. Blue Ridge Glass, supra, will demonstrate that the terms of the collective bargaining agreement in that case varied substantially from the terms of the collective bargaining agreement which is now before us. As pointed out by the court at page 635: 'The pertinent paragraph, 2, briefly summarized, is as follows: For one year's service performed by November 30 of the current year if employee has worked from February 1 to November 30 of the current year and at least 500 hours the preceding calendar year, he receives one week's vacation. * * *.'
 
 
 21
 In Miller v. Blue Ridge Glass Corporation, supra, it appears that the plaintiff's employees commenced striking on January 28, 1956. Thereafter, and at the time the case was heard in this court the plaintiff's employees had not worked for the defendant company. Thus, this court was forced to conclude as stated at page 637:
 
 
 22
 'Since appellants stipulated that they had not worked during the period from February 1 to November 30 of 1956, the argument that the employees were engaged in a legal economic strike, held the status of employees, and from a legal standpoint were working for appellee during that period, needs only to be stated to demonstrate its fallacy.'
 
 
 23
 We think it obvious that Miller v. Blue Ridge Glass Corporation was limited to its facts at the time it was decided and that it should now be limited ot its facts. We have been unable to find any other opinion in which such decision has been cited. The present action does not offer such a clear-cut solution based upon the facts, i.e., the contract.
 
 
 24
 The defendant-appellee claims that the vacation benefits under the collective bargaining agreement in question were intended for future services, but we find no provision of the contract which so states and no precedent requiring that such an interpretation should be placed upon the contract. In In re Wil-Low Cafeterias, Inc., 111 F.2d 429 (C.A.2, 1940), Judge Augustus N. Hand, speaking for the Court of Appeals for the Second Circuit, reached the conclusion that vacation pay constituted defrred wages. The same general principal has been followed by this Circuit in Hire v. E. I. DuPont De Nemours & Company, 324 F.2d 546 (C.A.6, 1963). This Court speaking through Judge Robert Taylor of the District Court for the Eastern District of Tennessee, quoted Judge Augustus N. Hand with approval, stating at page 551:
 
 
 25
 'A vacation with pay is in effect additional wages. It involves a reasonable arrangement to secure the well-being of the employees and the continuance of harmonious relations between employer and employee. The consideration for the contract to pay for a week's vacation had been furnished, that is to say, one year's service had been rendered prior to June 1 so that the week's vacation with pay was completely earned and only the time of receiving it was postponed. If the employer had discharged the employee wrongfully after the latter had done the work necessary to earn a vacation he could not be deprived of the benefits due him. * * *'
 
 
 26
 A similar issue was before the Supreme Court of Wisconsin in Valeo v. J. I. Case Co., 18 Wis.2d 578, 119 N.W.2d 384 (1963). In that action the contract gave the employees certain vacation benefits provided they were on the payroll and actually due a vacation. The contract terminated on February 29, three months before the June 1 dligbility date the employees went on strike, and remained on strike throughout the vacation period. The Supreme Court of Wisconsin reached the conclusion that the vacation pay should be distributed because it was earned during nine months of the vacation year that preceded the strike. See also Botany Mills v. Textile Workers Union, 30 L.A. 479 (N.J.Super.Ct.App.Div.1958).
 
 
 27
 This Court concludes that the plaintiffs-appellants were 'employees' of the defendant company, on March 22, 1963, within the meaning of that term as used in the collective bargaining agreement which is before us. Admittedly, the employees in question were employed on the first Saturday in March 1963. Admittedly, the employees in question had worked 40 full weeks during the 52 weeks preceding the first Saturday in March, 1963. The Court further concludes that the employees in question were 'on the payroll', within the meaning of that term as used in the collective bargaining agreements, at the time the payment of the vacation pay was due. We are satisfied that Miller v. Blue Ridge Glass Corp., supra, must be limited to its facts. We are further satisfied that absent any language to the contrary we must conclude that the vacation pay for which the collective bargaining agreement provided was consideration for past service rendered and was therefore due and payable to the employees in question in this case.
 
 
 28
 For the reasons herein stated the decision of the District Court is reversed and the matter is remanded to the District Court for entry of judgment for the plaintiffs.
 
 
 
 [1]
 Honorable W. Wallace Kent, Chief Judge, United States District Court, Western District of Michigan, sitting by designation