**TEAMSTERS LOCAL UNION NO. 688 affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, a labor organization, and Miscellaneous Drivers, Helpers and Public Employees Union, Local No. 610, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, a labor organization, Plaintiffs,**

v.

**JOHN J. MEIER COMPANY, a corporation, Defendant.**

No. 81–655C(1).

United States District Court, E. D. Missouri, E. D.

March 31, 1982.

Barbeau A. Roy, Clyde E. Craig, St. Louis, Mo., for plaintiffs.

D. Michael Linihan, St. Louis, Mo., for defendant.

## MEMORANDUM

WANGELIN, Chief Judge.

This matter is before the Court for a decision on the merits of controversy submitted to this Court by way of a joint stipulation of fact entered into by the parties herein. Plaintiffs seek judgment for amounts representing paid vacation time allegedly vested in them. This cause arose following the termination of the collective bargaining agreement between the parties, a strike, the failure of the parties to reach a new agreement, and the termination of defendant's business activities within the metropolitan St. Louis area. The amount of vacation time, the money sums, and the individuals involved, have all been agreed to, such that the only issue herein is the defendant's liability for said amount.

After consideration of the stipulation entered into by the parties, the exhibits attached thereto, the briefs of the parties, and the applicable law, this Court hereby enters the following findings of fact and conclusions of law. Any finding of fact equally applicable as a conclusion of law is hereby adopted as such and, conversely, any conclusion of law equally applicable as a finding of fact is hereby adopted as such.

The following joint stipulation was entered into by the representatives of the parties herein and therefore constitutes the factual submission made to this Court. Consequently, they will serve as this Court's findings of fact.

### Findings of Fact

1. Jurisdiction of the Court is founded upon Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a).

2. Plaintiff Teamsters Local Union No. 688, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter "Local 688") is a labor organization which represents employees for purposes of collective bargaining concerning wages, hours of work, and other terms and conditions of employment within the meaning of Sections 2(5) and 301(a) of the Labor Act, 29 U.S.C. §§ 152(5) and 185(a) and maintains an office at 300 S. Grand Avenue in the City of St. Louis, Missouri.

3. Plaintiff Miscellaneous Drivers, Helpers and Public Employees Union, Local No. 610, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter "Local 610") is a labor organization which represents employees for purposes of collective bargaining concerning wages, hours of work, and other terms and conditions of employment within the meaning of Sections 2(5) and 301(a) of the Labor Act, 29 U.S.C. §§ 152(5) and 185(a), and maintains an office at 300 S. Grand Avenue in the City of St. Louis, Missouri.

4. Defendant John J. Meier Company is a corporation existing under the laws of the State of Missouri and maintains an office and place of business at 5100 Columbia Avenue in the City of St. Louis, where at all material times it was engaged in the warehouse and distribution of grocery products. Defendant is an employer engaged in com-

merce within the meaning of Sections 2(2), 2(6) and 301(a) of the Labor Act, 29 U.S.C. §§ 152(5), 152(6) and 185(a).

5. Plaintiffs and defendant have been parties to a series of collective bargaining agreements throughout a period of over twenty years. Most recently defendant was a party to separate collective bargaining agreements with Local 688 and Local 610 effective by their terms during the period June 1, 1976 through June 30, 1979 covering certain classifications of employees.

6. By letters dated March 9, 1979, defendant's President separately notified both Local 688 and Local 610 that it wished to terminate the current collective bargaining agreement which was to expire June 30, 1979, that it was willing to meet and bargain further for the purpose of negotiating a new collective bargaining agreement, and that it was designating Thomas M. Hanna as defendant's sole authorized bargaining representative during the forthcoming negotiations.

7. By letter dated March 9, 1979, Local 610's Secretary-Treasurer John Metz notified defendant that the current collective bargaining agreement would expire June 30, 1979, and that Local 610 was willing to meet with defendant for the purpose of negotiating a new agreement.

8. By letter dated March 16, 1979, Local 688's Secretary-Treasurer Ron Gamache notified defendant that the current collective bargaining agreement would expire June 30, 1979, and that Local 688 was willing to meet with defendant for the purpose of negotiating a new agreement.

9. Negotiations between plaintiff Local 688 and defendant took place on August 3, October 8 and November 20, 1979. Negotiations between plaintiff Local 610 and defendant took place on September 21, October 8, November 1 and November 20, 1979. Both Local 688 and Local 610 proposed wage and fringe benefit increases, including increases in vacation benefits. Throughout negotiations defendant stressed its need to lower labor costs in order to survive financially, and offered to submit its books and records to both plaintiffs for

examination to prove the extent of defendant's financial hardship. During negotiations defendant asked for wage reductions and sought to eliminate or reduce several fringe benefits, including, among others, pension benefits and hospitalization insurance. As an alternative, defendant asked plaintiff Unions to counterpropose other benefit areas which might be reduced or eliminated. Defendant refused to agree to the negotiation demands of the Unions, and the Unions refused to agree to any reduction of wages or benefits.

10. By letters dated November 21, 1979, following the negotiation session on November 21, 1979, defendant's negotiator advised Local 610 and Local 688, *inter alia*, of the following:

... it is the opinion of the John J. Meier Company that negotiations have reached a point where it appears not probable that further negotiations will result in an agreement pursuant to the termination clause of our last collective bargaining agreement. This opinion does not preclude further negotiations but this is a simple recitation of our conclusions, based upon bargaining to date, and fulfills the termination requirements of the past collective bargaining agreement.

This is also notice to you that effective December 1, 1979, the John J. Meier Company will implement its last final offer submitted to you at our November 1, 1979 meeting, pursuant to your demands at the October 8, 1979 meeting.

11. As of December 1, 1979, an impasse had been reached in negotiations between plaintiff Unions and defendant.

12. As of December 1, 1979, Local 610 and Local 688 commenced an economic strike against defendant. All of their respective member-employees of defendant ceased work and participated in the strike.

13. During the course of the strike, plaintiffs and defendant met several times to renew negotiations for successor contracts. During negotiations each party made various alternative proposals, including, among others, proposals by plaintiff

Unions to retain the vacation benefit program, proposals by defendant to reduce the number of weeks of annual vacation entitlement (all of which was predicated upon employees' years of service), and, in the case of plaintiff Local 610, a proposal to reduce the weekly vacation pay from 45 hours per week to 40 hours per week. No agreements were reached with respect to vacation pay and no agreements were reached for successor contracts.

14. By letter dated November 24, 1980, Local 688 notified defendant that it intended to discontinue picketing and strike activities on November 26, 1980, that employees in the bargaining unit represented by Local 688 were thereby submitting their unconditional offer to return to work beginning November 26, 1980, and that Local 688 was requesting payment of vacation benefits to striking employees it represented who had qualified for payment under Article XXVII, Section 5 of the 1976–1979 agreement.

15. By letter dated November 26, 1980, Local 610 notified defendant that it intended to discontinue picketing and strike activities on November 28, 1980, that employees in the bargaining unit represented by Local 610 were thereby submitting their unconditional offer to return to work beginning December 1, 1980, and that Local 610 was requesting payment of vacation benefits to striking employees it represented who had qualified for payment under Article XII, Section 5 of the 1976–1979 agreement.

16. Since the commencement of the strike, on December 3, 1979, none of the striking employees has returned to work for defendant.

17. Defendant refused to pay employees represented by Local 610 and Local 688 the requested vacation pay, and declined the request of both Unions to arbitrate the issue.

18. On January 30, 1981, Local 610 and Local 688 filed separate unfair labor practice charges against defendant, in Cases Nos. 14–CA–14658–1 and 14–CA–14658–2, alleging that defendant had engaged in an unlawful refusal to bargain in violation of Sections 8(a)(1) and (5) of the National Labor Relations Act, as amended, 29 U.S.C. §§ 158(a)(1) and (5), by reason of defendant's refusal to submit the question of vacation pay to arbitration.

19. By letter dated February 23, 1981, the Regional Director for the Fourteenth Region of the Board refused to issue complaint on the basis of the aforementioned charges.

20. Following issuance of the Regional Director's letter dated February 23, 1981, Local 610 and Local 688 filed a joint appeal with the Office of Appeals of the General Counsel of the Board.

21. By letter dated April 20, 1981, the General Counsel of the Board denied the aforementioned appeal.

22. Both plaintiffs and defendant have agreed in the interpretation of their respective contracts that vacation earned in one calendar year is to be taken and paid during the succeeding calendar year, with the only exception being in the case of a first-year employee. All of the employees for whom plaintiffs seek vacation pay satisfied the contractual prerequisites for vacation benefits set forth in plaintiffs' exhibits, assuming defendant was legally obligated to pay vacation pay in 1980 for work performed in 1979. Between July 1, 1979 and December 1, 1979, these employees continued to work for defendant and received wages and fringe benefit contributions at the rates provided in the 1976–1979 agreements.

23. If it is found that the employees represented by both plaintiffs were entitled to vacation pay in 1980 for work performed in 1979, then both plaintiffs and defendant stipulate that the entire amount due each individual employee is as follows:

Local 610

| Employee | Amount |
| --- | --- |
| A. Bohn | $2,527.20 |
| A. McKillop | 2,106.00 |
| H. Brown | 1,684.80 |
| D. Flores | 1,263.60 |
| D. Torres | 421.20 |

Local 688

| Employee | Amount | Employee | Amount |
|----------|--------|----------|--------|
| B. Block | $2,595.60 | E. Kellison | $1,854.00 |
| N. Hollins | 2,573.20 | W. Baier | 1,818.00 |
| T. McCain | 2,545.20 | S. Dalton | 1,470.40 |
| C. Schwantner | 2,224.80 | R. Messmer | 1,499.20 |
| J. Saffo | 1,838.00 | E. Welby | 1,102.80 |
| J. Messmer | 1,130.40 | M. Clasen | 289.52 |
| P. White | 1,108.80 | H. Mulach | 1,298.40 |
| T. Mueller | 1,108.80 | D. Lungwitz | 985.80 |
| D. Gehm | 1,108.80 | L. Marshall | 928.80 |
| T. Meyer | 739.20 | M. Thomure | 928.80 |
| | | M. Martin | 619.20 |

The total amount of the above figures is $37,770.52.

24. Between January 5 and December 29, 1979, defendant paid members of plaintiff union's vacation pay in the aggregate amount of $44,615.53, to employees whose work for defendant in calendar 1978 had qualified them for vacation pay during calendar 1979.

25. Defendant is no longer engaged in the wholesale grocery business in St. Louis, Missouri and is in the process of closing out its local operation.

### Conclusions of Law

The collective bargaining agreement which governed the relationship between the parties herein contained an 'evergreen' clause which provided that in recognition of the necessity of continued negotiations beyond the date that the collective bargaining agreement terminated, that between the termination date and the date the new agreement is reached, the parties (a) would continue to bargain in good faith until an agreement was reached or until one party concluded that it was not probable that the negotiations would result in an agreement, (b) agreed that terms and provisions of the old collective bargaining agreement would continue until a new agreement was reached or until negotiations terminated, and (c) agreed that when a new agreement was reached, the new contract containing desired modifications would be made retroactive to the termination date of the original collective bargaining agreement. (Collective Bargaining Agreement Article XXXVIII). Although plaintiffs argue strenuously that this provision in the agreement supports its right to receive vacation pay, the right to receive such vacation pay cannot be properly grounded on the continued existence of the contract. The vacation pay herein was claimed after the collective bargaining agreement had terminated, after negotiations had ceased and after the economic strike had begun. By December 3, 1979 all these events had occurred and the contract by its own terms had lapsed. The continuing obligation under the collective bargaining agreement continued through the negotiation process until one party (as management did) exercised its contract right to declare the improbability of the success of continued negotiations. At that juncture, and pursuant to its own terms, the contract terminated. Since the collective bargaining agreement did expire, rights under that contract could not accrue pursuant to the agreement after this date. *International Union v. Atlas Tack Corp.*, 590 F.2d 384 (1st Cir. 1979). The sole question which remains herein is whether the right to vacation pay vested in the employee for work done prior to the 1979 termination of the contract, thereby making said benefits payable in 1980.

Vacation pay has most often and most accurately been described in the words of Judge Hand as:

A vacation with pay is in effect additional wages. It involves a reasonable arrangement to secure the well being of employees in continued harmonious relations between employer and employee. The consideration for the contract to pay four weeks vacation had been furnished, that is to say, one year of service had been rendered prior to June 1, so that the week's vacation with pay was completely earned and only the time of receiving it was postponed.

*In re Wil-Low Cafeterias*, 111 F.2d 429, 432 (2nd Cir. 1940).

It has been stipulated herein that all employees for whom plaintiffs seek vacation

pay satisfy the all contractual prerequisites for vacation benefits.

Since vacation pay is by its nature consideration for past services rendered, the Sixth Circuit has held that the rights to this benefit once they have accrued possess continued viability beyond the termination date of the contract under which the benefit was earned. *Local Union 186 United Packinghouse Food and Allied Workers v. Armour and Co.*, 446 F.2d 610 (6th Cir. 1971). Important to the *Armour* court's holding was the finding that a condition in the agreement that the employees be "on the payroll" at a certain date (January 1) prior to which the employer had closed his plant, did not preclude the employees recovery. A similar ruling was made in *Smith v. Kingsport Press Inc.*, 366 F.2d 416 (6th Cir. 1966) where that Circuit again characterized vacation pay as deferred compensation for past services rendered and a contract condition that employees be "on the payroll" on the fourth Friday in March did not operate to deny employees the benefits when they were on strike at that time and their collective bargaining agreement had expired. The Third Circuit held in similar circumstances that although wages and similar benefits need not be paid to striking employees, sickness and accident benefits had accrued under a prior collective bargaining agreement and could not be terminated during strikes even after contract termination. *E. L. Wiegand Division v. N.L.R.B.*, 650 F.2d 463 (3rd Cir. 1981); *see also Schneider v. Electric Auto-Lite Co.*, 456 F.2d 366 (6th Cir. 1972).

The Eighth Circuit has spoken on this issue and has seemingly reached a contrary result in *Buchholtz v. Swift & Co.*, 609 F.2d 317 (8th Cir. 1979); *cert. denied* 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648. But upon close examination this case is distinguishable from the facts herein and the above appellate decisions in several respects. In *Buchholtz*, the employer closed its plants on November 29, 1969 and the contract contained a clause which conditioned the payment of vacation benefits as follows "provided that on December 28 he is being carried on the active payroll". The

Court effectuated this term and ruled that since the plant was closed by management on November 29, 1969, the employees were not on the active payroll on December 28, 1969. No such requirement is indicated in the collective bargaining agreement before this Court.

The *Buchholtz* court also relied heavily upon the fact that after the employees asserted their claims for vacation pay due them, the union pressed such claims but negotiated a settlement of all its claims relinquishing vacation pay claims in return for concessions in the area of pension rights. Allowing management to negotiate these post contractual differences to an agreement with the union mitigated against subsequently allowing the employees to press their own individual rights after said settlement while enjoining the benefits of their union's bargain. No such settlement was ever reached with plaintiffs' union over the issues herein.

Judge Ross relied heavily upon contract interpretation for his holding in *Buchholtz*. "... we do not quarrel with the general proposition that vacation pay is compensation for work; however, the parties agreed to a system with two eligibility requirements" *Buchholtz* at 325 (amount of work done in the preceding year as well as presence on the payroll on December 28). There was ample evidence of the parties' recognition of this valid condition in *Buchholtz* since employees who were fired, laid off, quit, or died, etc. prior to this December 28th date, were not allowed vacation pay. No such dual eligibility or 'presence on the payroll' requirement is present here and in fact, the workers herein satisfied all the contractual preconditions to the payment of vacation pay.

This Court feels these distinctions merit this Court's use of the analysis employed by the Sixth Circuit and distinguish this case from the contractual analysis employed by the Eighth Circuit in *Buchholtz*.

As the plaintiffs represent employees who were vested with the right to collect vacation benefits prior to the termination

of the contract, the fact that the parties never reached a new agreement, and the employees never returned to work does not, without further contractual preclusion of said rights, prevent employees from collecting previously earned vacation benefits from defendant.

It is therefore proper that plaintiffs have judgment against defendants herein.