The **PIANO AND MUSICAL INSTRU-MENT WORKERS UNION, LOCAL NO. 2549 OF the UNITED BROTHER-HOOD OF CARPENTERS AND JOIN-ERS OF AMERICA, AFL–CIO, et al.,** Plaintiffs,

v.

**W. W. KIMBALL COMPANY, Defendant.**

No. 62 C 1750.

United States District Court
N. D. Illinois, E. D.

Sept. 13, 1963.

Bernard M. Mamet, Chicago, Ill., for plaintiffs.

Thomas R. Mulroy, Hopkins, Sutter, Owen, Mulroy & Wentz, Chicago, Ill., for defendant.

PARSONS, District Judge.

During that period of time between October 1, 1960, and October 1, 1961, defendant and the plaintiff Union were parties to a collective bargaining agreement covering the wages, hours, and working conditions of Kimball's production and maintenance employees. In August of 1961, Kimball decided to discontinue its Melrose Park, Illinois, operation and to transfer the same to French Lick-West Baden, Indiana. Pursuant to this decision, Kimball began the process of discharging all its employees at Melrose Park. The French Lick Plant began its operation on October 9, 1961,

and on that date, nine days *after* the collective bargaining agreement had "terminated", Kimball began hiring new employees for its French Lick Plant, none of whom had been previously employed at the Melrose Park Plant.

The pertinent provisions of the collective bargaining agreement include the following:

Article III—Section 2:

"6. When re-employment occurs employees will be called back to work in the order of their seniority.

\* \* \* \* \* \*

"9. Employees who are not recalled within two (2) years following a lay-off are deemed to have lost their seniority standing."

Article VIII—Section 1:

"Any difference arising from the interpretation or application of this agreement between the parties hereto, which cannot be settled directly by the parties concerned, will be referred to a board of arbitrators. \* \* \*"

Article XI:

"It is understood that this agreement shall continue to be in full force and effect from 12 noon, October 1, 1960, to October 1, 1961. \* \* \*"

Plaintiffs filed a complaint on September 14, 1962, charging that defendant breached its collective bargaining agreement by refusing to hire at Kimball's plant in French Lick those employees laid off when Kimball's plant in Melrose Park was closed down.

In Count I of the complaint, the Union alleges that Kimball's refusal to hire and to grant vacation pay to certain employees created arbitrable disputes under the collective bargaining agreement and the Union demands that Kimball be compelled to submit the alleged disputes to arbitration. In Count II, the Union and the individual plaintiffs representing a class seek to obtain vacation pay for former Melrose Park employees and damages for wages allegedly lost because of Kimball's refusal to rehire the former Melrose Park employees at the French Lick Plant. And, in Count III, the Union seeks damages for membership dues allegedly lost as a result of the same refusal to rehire.

Insofar as Counts I and II seek vacation pay, the same have been dismissed pursuant to a stipulation of the parties filed on May 28, 1963. Consequently, all three counts are narrowed to the claim that defendant breached the collective bargaining agreement by failing to rehire the former Melrose Park employees at the French Lick Plant.

Plaintiffs have filed, as to Count I, a motion for judgment on the pleadings, which has been taken as a motion for summary judgment, and defendant has filed a motion for summary judgment as to all three counts.

It appearing that this Court has jurisdiction and that there is no genuine issue as to any *material* fact, the Court may thus proceed to rule upon the respective motions and issues of law thereby presented. The basic issue simply is whether or not there is any arbitrable dispute or difference arising from the interpretation or application of the collective bargaining agreement here involved.

There is no doubt that there is a "difference" between the plaintiffs and the defendant arising from the interpretation or application of Article III, Section 2, Paragraph 6, of the collective bargaining agreement. Defendant contends, however, that this difference is neither arbitrable nor reviewable in the courts because the hirings at the French Lick Plant on October 9, 1961, which gave rise to the dispute, did not occur until *after* the agreement "terminated" on October 1, 1961. Consequently, it is argued, the agreement, including the seniority and arbitration provisions, was not then and is not now enforceable under the facts of this case.

It must be noted at this point that the arbitration provision in the agreement is extremely broad. It speaks not of "disputes" but of "differences", and it

embraces "any" difference. Thus, assuming no "dispute" arose until the time Kimball hired new employees at its new plant, is it not true, nevertheless, that "differences" concerning the interpretation or application of Article III, Section 2, Paragraph 6, had already arisen prior to the termination of the agreement? This, at least implicitly, is what Paragraph 9 of Count I alleges, and this, it would seem, is sufficient to bring into operation even at this late date (see Procter & Gamble Independent Union of Port Ivory, N. Y. v. Procter & Gamble Mfg. Co., 2 Cir., 312 F.2d 181) the broad language of the arbitration clause.

Paragraph 9 of Count I, however, alleges that the plaintiff Union and the defendant met on two occasions to "discuss and consider their differences of opinion concerning the interpretation or application of the existing collective bargaining agreement as it affected the rights of the laid off employees." Due to the nature of the allegation, a denial thereof would not place in issue the existence of a "difference", but merely the existence of a meeting. Thus, because of the lack of clarity of Paragraph 9 in pleading the existence of an arbitrable "difference", it will be assumed that no "difference" did in fact arise until October 9, 1961, when the new hirings occurred.

But even when making this assumption, it would appear that this Court, under the agreement, should order this cause to arbitration, if not as to the differences concerning the new hirings at the French Lick Plant, then on the question of whether or not this particular difference is arbitrable in the first instance. The language of the arbitration clause is so inclusive that it even seems to contemplate arbitration of the question of arbitration.

Under Article VIII, a difference of opinion as to whether something is arbitrable is itself a "difference" arising under the agreement which should be arbitrated. More specifically, the arbitrability of the "difference" arising from the interpretation or application of Article VIII, the arbitration provision,

as well as Articles III and XI involving seniority rights and the duration of the agreement, is an arbitrable "difference" under the terms of the agreement. It seems apparent that the parties have agreed to submit even this question of contract interpretation to the arbitrator.

Plaintiffs claim that the defendant has refused to arbitrate. This claim, on its face, is governed by the contract, and in particular the arbitration clause. While Article XI, at first glance, would appear to terminate the *entire* contract as of October 1, 1961, such a result is not at all certain in light of the language "full force and effect" and in light of the prospective operation of Article III. Is it not true that the question of the interpretation and application of the arbitration clause, as well as the interpretation of Articles III and XI, is a question for the arbitrator, where the broad language of an arbitration clause permits such a construction, as here? Was it not the arbitrator's construction of that clause and not the Court's that was bargained for? I think it was, and arbitration must be ordered on this basis alone. Cf. United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1437, 4 L.Ed.2d 1409; and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. But for purposes of further inquiry, we shall assume the contrary to be true for it may develop ultimately that this last determination is in error.

Thus, we shall assume that a "difference" arose on October 9, 1961, out of the new hirings at the French Lick Plant, and we shall also assume that the arbitrability of *that* difference is the issue to which this Court must properly address itself.

Article XI states that the "agreement shall continue to be in full force and effect from 12 noon, October 1, 1960, to October 1, 1961." It does not state that the entire agreement shall terminate or

expire on October 1, 1961, nor does it state that rights which have accrued under the terms of the agreement shall become null and void on that date. Additional rights cannot accrue thereunder after October 1, 1961, but what of those rights which already had accrued, such as seniority rights under Article III of the agreement?

As in the case of General Tire & Rubber Co. v. Local No. 512, etc., D.C., 191 F.Supp. 911, aff'd., 294 F.2d 957, the dispute here between the parties is based upon a claimed violation of rights established by the collective bargaining agreement (and in particular Articles III, VIII, and XI), and involves their application and interpretation. In agreeing to arbitrate such grievances, the parties did not differentiate between grievances arising during *or after* the termination of the agreement. Plaintiffs' and defendant's obligation to arbitrate grievances was not limited only to those which might arise during the life of the agreement. And in the absence of such limitation its obligation must be deemed to include arbitration of claims for rights which accrued during the life of the agreement, but which are sought to be enforced thereafter. (See: General Tire & Rubber Co. v. Local No. 512, etc., supra.)

As in the case of pension rights and retirement benefits, seniority rights extend into the future. Are these rights, which are often referred to as "vested rights" (though perhaps improperly so), and which arise out of the terms of a union agreement to be honored only so long as the *whole* of the agreement is enforceable? Are these rights to be held for naught thereafter? Zdanok v. Glidden Company, 2 Cir., 288 F.2d 99, answers these questions in the negative.

And as noted in Procter & Gamble Independent Union v. Procter & Gamble Mfg. Co., 2 Cir., 312 F.2d 181, at 186, in the same sense that Zdanok applies the principle of "vested rights" and prospective enforcement to seniority, "the agreement to arbitrate is prospective and the duty to arbitrate survives the termination of the agreement." The Court went on to observe that grievances "which are based upon conditions arising *during the term of the agreement to arbitrate* are arbitrable after that term has ended." Clearly, the dispute involved in the case at bar is based upon "rights", which could be included in the all inclusive term "conditions", arising and accruing during the term of the agreement to arbitrate.

The Court, however, went on to say: "This principle has no application to grievances which arise *after the expiration* of the agreement to arbitrate. To hold that Zdanok suggests otherwise would be to read into that case a requirement not that accrued seniority should be credited, but that new seniority could be acquired after the expiration of the agreement." Under a literal interpretation of this language it would appear that a dispute even over seniority rights would have had to arise during the term of the agreement in order for it to be arbitrable. I doubt seriously that the Court intended this effect, for how then could anyone enforce his "vested right" of retirement payments, for example, or even seniority rights, when the enforcement of such rights and a possible resulting dispute more than likely would come to pass far in the future and long after the agreement had terminated. What the Court, I think, intended to say was that grievances which arise after the expiration of the agreement to arbitrate, *and which are not based on rights which have accrued during the life of the agreement,* are not arbitrable under that agreement.

This interpretation would be logical for the Court in Procter & Gamble was concerned with disputes which arose after the termination of the collective bargaining agreement and which were not based on "vested" rights that operated prospectively beyond the termination of the contract. The Court made clear, as set out in the second sentence of the quotation in the preceding paragraph, that while *accrued* rights of seniority could be enforced, new seniority rights could not be acquired after the termination of the agreement.

Furthermore, it must be remembered that the Procter & Gamble case did not overrule Zdanok. And the Court in Zdanok, apparently not impressed with the fact, *if it was a fact* as suggested, that the dispute over seniority rights arose before the termination of the contract, stated at Page 103 of 288 F.2d: "We think, then, that if the plaintiff had continued to operate the Elmhurst plant, without a renewal of the union contract, or had reopened it after it had been closed for a time, the employees would have been entitled to reemployment, with seniority." This statement clearly enough contemplates a situation where a dispute over seniority rights, which are prospective in character as they were in Zdanok, arises *after* the termination of the contract. And the duty to arbitrate such a dispute even after the contract has terminated is explicitly recognized by the Court in Procter & Gamble, at Page 186 of 312 F.2d.

■ Accordingly, it is the opinion of the Court that the "difference" between the plaintiffs and the defendant concerning the hiring practices at the French Lick Plant arose from the interpretation and application of Articles III, VIII, and XI of the collective bargaining agreement and the same is arbitrable. It must be understood that this last determination and the reasoning in support thereof is mere *dicta* in the event this cause proceeds to arbitration immediately hereafter, for it is the opinion of the Court that the question of whether this particular difference is arbitrable also is subject to arbitration. Thus, the last determination is binding only in the event that a reviewing court sustains that determination after reversing the determination that the question of arbitration is itself a difference which is subject to arbitration under the terms of the agreement. Plaintiffs' motion for judgment on the pleadings as to Count I, taken as a motion for summary judgment as to Count I, is allowed and defendant's motion for summary judgment as to Count I is denied.

Defendant's motion for summary judgment as to Counts II and III is likewise denied, but a motion to dismiss said counts will be allowed, if such motion is presented, on the ground that contractual remedies have not been exhausted.