**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, LOCAL LODGE 2369, et al., Plaintiffs-Appellants,**

v.

**OXCO BRUSH DIVISION OF VISTRON CORPORATION, an Ohio Corporation, Defendant-Appellee.**

No. 74–1995.

United States Court of Appeals, Sixth Circuit.

May 15, 1975.

Cecil D. Branstetter, Branstetter, Moody & Kilgore, Carrol D. Kilgore, Nashville, Tenn., for plaintiffs-appellants.

William N. Ozier, Bass, Berry & Sims, Nashville, Tenn., for defendant-appellee.

Before LIVELY and ENGEL, Circuit Judges; and MILES,* District Judge.

LIVELY, Circuit Judge.

This case concerns the right of employees to collect vacation pay from their employer who, during an economic strike, permanently closed the plant· at which they worked. There was a collective bargaining agreement between the plaintiff Local 2369 (the Union) and the defendant covering employment at the Cookeville, Tennessee plant of defendant. Article XVII of the agreement provided as follows:

### ARTICLE XVII

### DURATION

Section 1 – The terms of this Agreement shall become effective on the 8th day of July, 1971, and shall continue in force and effect for the period ending at midnight on the 11th day of May, 1973, except that the terms hereof shall be automatically extended from year to year hereafter unless sixty (60) days prior to the 12th of May, 1973, or sixty (60) days prior to the anniversary of said date in any year thereafter,

written notice of termination is given by one party to the other. This Agreement may, however, be amended at any time by mutual consent.

There was no extension of the collective bargaining agreement and it expired on May 11, 1973. Shortly thereafter, the members of the Union went out on strike and, following rejection by the membership of a new collective bargaining agreement negotiated between the Union and defendant, defendant announced on July 9, 1973 its decision to close the Cookeville plant permanently.

The right of employees of the Cookeville plant to vacations and vacation pay was covered by Article XII of the contract. Portions of this article pertinent to the present case are as follows:

### ARTICLE XII

### VACATIONS

A person who is an employee of the Company on December 31st of any year will be granted a vacation with pay (or pay in lieu of vacation) in the succeeding calendar year under the following conditions:

Section 1 – THE LENGTH OF A VACATION

The length of an employee's annual vacation with pay depends on his record of continuous service with the Company. Service is counted from the latest established full time employment date shown on the Company's personnel records for the employee. The vacation to which an employee is entitled according to his length of service is shown below.

a. After completing one year of continuous service

..... One week each year

Note: Except as provided in Section 2(a)

b. Starting with the calendar year in which three years of continuous service is completed

..... Two weeks each year

---

* The Honorable Wendell A. Miles, Judge, United States District Court for the Western District of Michigan, sitting by designation.

c. Starting with the calendar year in which ten years of continuous service is completed

. . . . . Three weeks each year

\* \* \* \* \* \*

Section 3 — Vacation Pay

a. Vacation pay will be based on an employee's annual straight time hours worked for the previous year.

b. All money due as vacation pay will be paid on regular pay days.

c. The vacation pay to which an employee is entitled according to his length of service is shown below:

1. Two percent (2%) after completing one year of continuous service.

2. Four percent (4%) after completing three years of continuous service.

3. Six percent (6%) after completing ten years of continuous service.

For purposes of computing vacation pay in paragraphs (1), (2) and (3) above, the employee's base rate of pay at the time the vacation is taken will be used.

\* \* \* \* \* \*

Section 4 — Miscellaneous

\* \* \* \* \* \*

d. In case of release, resignation or layoff for reasons beyond an employee's control, he shall be granted vacation pay (in lieu of vacation) to which he is entitled under the plan.

e. In case of discharge for just cause, no vacation pay will be granted.

f. Vacation pay will be granted in event an employee dies before completing his scheduled vacation.

g. During the year in which an employee retires, he will be given the full vacation to which he is eligible.

Shortly after the plant closed, all persons who had been employees on December 31, 1972 received vacation pay based on the hours worked in 1972 in accordance with Article XII, Section 3a. of the agreement. The issue in this case is whether those employees who were working on May 11, 1973 when the collective bargaining agreement expired and who thereafter went out on strike are entitled to vacation pay based on the hours worked between January 1 and May 11, 1973. The defendant has refused to make such payments on the ground that none of the claimants was an employee of the Company on December 31, 1973 which is claimed to be a condition precedent for entitlement to vacation pay based on time worked in 1973. The Union maintains that this condition was rendered impossible of achievement by the claimants when the defendant permanently closed the Cookeville plant.

The Union and three individuals who had been employees of defendant during all of 1972 and until the closing of the plant filed this suit as a class action seeking a mandatory injunction compelling the defendant to arbitrate the vacation pay dispute or, in the alternative, seeking an award by the court of such pay. The defendant did not file an answer, but did file a motion for summary judgment supported by an affidavit of the plant manager at its Cookeville facility during 1972 and 1973. The Union then countered with a motion for summary judgment supported by an affidavit of the business representative for the "district lodge" which serviced Local 2369. In this affidavit, it was stated that following the announcement of the closing of the plant the Union insisted that employees were entitled to vacation pay for work performed from January 1, 1973 through May 11, 1973. It was stated that demands were made on the defendant for such payment in September 1973 even though, under the terms of the agreement, such payment would not be due until 1974. A formal written demand was sent to the defendant in October 1973 and rejected by the defendant in a letter to the Union dated November 12, 1973.

The parties stipulated that payment of vacation pay measured by time worked in 1972 had been made on July 27, 1973,

after expiration of the 1971–1973 collective bargaining agreement, after commencement of the strike and after the defendant had announced its decision to close the plant. It was further stipulated that no vacation pay had been paid for work done between January 1, 1973 and May 11, 1973. The district court granted the defendant's motion for summary judgment and denied that of the Union. On appeal, the Union first contends that the dispute concerning vacation pay was an arbitrable issue under the collective bargaining agreement and that the district court should have directed that the matter be submitted to arbitration rather than deciding the case itself.

■ Since arbitration is a matter of contract, in an action brought under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, it is for the court to determine on the basis of the agreement between the parties whether or not a party must arbitrate and what issues it must arbitrate. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). The 1971–1973 agreement between the Union and the defendant provided for arbitration as the fifth step in a grievance procedure under Section 2, Article IV, as follows:

Step 4 — If the grievance is not resolved in Step 3, then it will be discussed during the next regularly scheduled monthly meeting which is normally held on the third Thursday of the month between the Shop Committee, along with a representative of the Union, and the Plant Manager and/or his designated representative. During this meeting the matter shall be thoroughly discussed and a diligent effort made by the parties to resolve the dispute. Upon their failure to do so, however, the Union may invoke arbitration within ten (10) working days from the conclusion of the meeting. If the dispute is resolved, then such settlement shall be reduced to writing and copies will be made available to Union representatives in attendance at this meeting.

Step 5 — If settlement is not reached under Step 4, the grievance may be submitted to arbitration; providing, the grievance involves the interpretation, application, or alleged violation of the specific provisions of this written Agreement. The parties agree that the specific provisions of this Agreement, along with the mutually agreed upon interpretations of the provisions of this contract, contain the complete understanding between them.

Section 5 of Article IV dealt with disputes between the Union and the Company in the following language:

Section 5 — In the event of a dispute between the Union and the Company regarding the proper interpretation of the provisions of this Agreement, the Union shall have the right to file a grievance at Step 3 of the grievance procedure. The Arbitrator's decision on any such grievance shall be limited to a determination of the issue only and shall not include compensation, damages, or other redress to any employee or the Union.

In Local Union No. 998, U.A.W. v. B. & T. Metals Co., 315 F.2d 432, 436 (6th Cir. 1963), we held that in a case such as this the court must determine "whether at the time of the claimed grievances there was a valid bargaining agreement in existence, which existence is necessary in order for an employee or the Union to compel arbitration." It is clear that no collective bargaining agreement was in existence between the Union and the defendant in the present case at the time the dispute concerning vacation pay based on hours worked in 1973 first arose. It is also clear from examination of the record that no steps were taken by the Union or individual members to institute grievance proceedings during the life of the collective bargaining agreement with respect to the defendant's failure to make vacation payments or otherwise to preserve this question for arbitration. According to the affidavit filed by the Union, this issue was first raised with the defendant in September 1973, which was some four months after

the expiration of the contract. If the dispute between the parties had arisen while the agreement was in force or if the grievance procedure had been started during the life of the contract, the right to arbitration would not have ended with the expiration of the collective bargaining agreement. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); The Steelworkers Trilogy, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957); Procter & Gamble Independent Union v. Procter & Gamble Manufacturing Co., 312 F.2d 181 (2d Cir.), cert. denied, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1962).

■ On appeal, the Union has relied particularly on Piano & Musical Instrument Workers Union v. W. W. Kimball Co., 221 F.Supp. 461 (N.D.Ill.1963), rev'd, 333 F.2d 761 (7th Cir.), rev'd, 379 U.S. 357, 85 S.Ct. 441, 13 L.Ed.2d 541 (1964). In that case, the District Judge found that the collective bargaining agreement provisions for arbitration were not limited to grievances arising during the life of the agreement and that disputes regarding rights which "accrued" during the life of the agreement but which operated prospectively after expiration of the agreement were arbitrable at such time. The per curiam opinion of the Supreme Court of the United States merely directed that the dispute be submitted to arbitration with a reference to earlier cases which were similar in some respect to the one under review. From examination of the opinions of the district court (see particularly Piano & Musical Instrument Workers Union v. W. W. Kimball Co., 239 F.Supp. 523, 524 (N.D. Ill.1965)) and the court of appeals, it may be concluded that the grievance actually arose prior to expiration of the contract and was thus subject to arbitration under previous Supreme Court decisions. We are not persuaded that *Kimball* is authority for reversing the conclu-

sion of the District Judge in the present case that arbitration was not available to the Union. A recent decision of the Seventh Circuit in Oil, Chemical & Atomic Workers International Union v. American Maize Products Co., 492 F.2d 409 (1974), cert. denied, 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974), rests upon a factual situation more like that disclosed by the record in this case. The district court correctly determined that the vacation pay dispute in the present case was not subject to compulsory arbitration.

The issues on the merits of this case are not new to the court. In Smith v. Kingsport Press, Inc., 366 F.2d 416 (6th Cir. 1966), we dealt with a situation where a collective bargaining agreement expired on January 30, 1963 and, following a period of working without a contract, the employees went out on strike on March 11, 1963. Under the provisions of the expired agreement vacation pay was due and payable on March 23, 1963 for those employees "on the payroll" on the fourth Friday in March. This court reversed the finding by the district court that the employees had voluntarily terminated their employment on the date of the commencement of the strike, which was prior to the fourth Friday in March, and therefore were not eligible for vacation pay. It was held that a person continues to be an employee when his work has ceased as a consequence of a current labor dispute and that nothing in the record supported a conclusion that the employees had resigned their jobs. The court also found that the employees remained "on the payroll" as of the fourth Friday in March even though they had ceased the actual performance of work by going on strike several weeks earlier. Adopting the widely accepted view set forth in In re Wil-low Cafeterias, Inc., 111 F.2d 429 (2d Cir. 1940), that vacation with pay constitutes additional wages for services already performed and not benefits for intended future services, this court held that the employees who were out on strike on the eligibility date set forth in the contract were nevertheless entitled to vacation pay.

Two recent cases from this court have dealt with situations where vacation pay was sought after the closing of a plant covered by collective bargaining agreements which contained vacation pay provisions. In Local Union No. 186, United Packinghouse, Food & Allied Workers v. Armour & Co., 446 F.2d 610 (1971), cert. denied, 405 U.S. 955, 92 S.Ct. 1170, 31 L.Ed.2d 231 (1972), the plant was closed in September 1966 and eligibility for vacations was based on the number of years of continuous service of each employee as of January 1st of each year. The district court held that the employees would be eligible to receive vacation pay only if they were working on January 1, 1967 and since the plant was closed in September 1966, their claims were denied. This court speaking through Judge Peck again referred to the principle that vacation pay constitutes earned wages with only the payment being deferred. The company received benefit when the work was performed by the employees and nothing was added by a person's being on the payroll on a particular date. After reviewing the past history between the company and the union, the court concluded that the eligibility date in the contract, if indeed January 1st was actually an eligibility date, was not a material provision of the contract. It was determined that January 1st had been fixed more for administrative convenience than as an absolute condition for entitlement to vacation pay.

The company there argued that even if January 1st was not a material date under the contract, the anniversary of each particular worker's service with the company remained a critical date, and that all workers whose 1966 anniversary date had not been reached at the time the plant closed were disqualified to receive vacation pay. This court did not hold that the anniversary date was a material part of the contract. It did hold, however, that on the basis of general contract principles the unilateral action of the company in closing the plant was "a refusal to accept the proffer of continued performance on the part of the employees . . .." *Id.* at 615. In the present case, the defendant does not claim that the anniversary date of each employee is a critical date, but rather that the contractual sine qua non for vacation with pay or pay in lieu of vacation is that a person be an employee on December 31st.

The most recent treatment of the issue by this court is found in the opinion of Judge Weick in Schneider v. Electric Auto-Lite Co., 456 F.2d 366 (1972). In that case, the employer closed its Toledo plant after a "phase-out," and on the last day of work some of the employees picketed the premises in protest. The employer claimed that these activities were a strike which violated the collective bargaining agreement then in existence at the plant and it notified the union that it was terminating the agreement, including all benefits thereunder. The district court held that the picketing activities were not a strike, but "an empty and meaningless protest" which resulted directly from the shut-down. It awarded pro rata vacation pay to the employees for the time worked in the year of the shut-down, 1962. Both parties appealed, with the union claiming that vacation pay should have been awarded for the full year 1962. This court held that the weight of federal law does not treat a qualifying date contained in the provisions of a collective bargaining agreement granting vacation and vacation pay as a sine qua non to the right to receive such pay. The court again recognized vacation pay as additional wages for services already performed and held that pro rata vacation pay was due the employees because the company's action in closing the plant rendered it impossible for the employees to continue working to the qualifying date. The court also held that there is no authority for allowing vacation pay for the entire year or for any period after an employee actually ceased working.

In its opinion in the present case, the district court stated that the plant was closed because of the strike. We

have carefully examined the record and have failed to find any evidence to support this statement. Even if the strike was the direct cause of the defendant's decision to close the plant, this would not relieve the defendant of obligations it had already incurred under the collective bargaining agreement. Employees who exercise their right to strike do not thereby place in jeopardy rights which they have secured by previous collective bargaining. The contract with its no-strike clause had expired before the employees commenced the economic strike, but the claimants remained employees of defendant while on strike, Smith v. Kingsport Press, *supra,* and until the time that defendant closed the plant. We must determine from an examination of the contract whether the requirement that claimants be employees on December 31st is a "material" provision of the contract.

In considering the facts disclosed by the record in light of the provisions of the contract, we note that payments made by defendant on July 27, 1973 were actually vacation pay in lieu of vacations which were due to be taken in 1973, since all the recipients had been laid off prior to taking 1973 vacations. The length of the vacations and amounts of pay in lieu thereof were fixed in the contract by reference to the number of years of continuous service completed by each employee prior to December 31, 1972, and the number of straight-time hours worked in 1972. For our purposes, 1972 was the "measuring year" and 1973 the "vacation year" with respect to these payments. Similarly, the payments sought in this action are actually vacation pay in lieu of vacations which would normally have been taken in 1974. Here, 1973 would be the measuring year and 1974 the vacation year. Under the contract the length of vacation of each employee was determined solely by the number of years of continuous service completed by him in the measuring year. It was not governed by the amount of time actually worked during either the measuring year or the vacation year. Vacation pay, on the other hand, was a

percentage of an amount which is the product of an employee's base rate at the time the vacation is taken multiplied by the "annual straight time hours worked for the previous year." The date of December 31st was not critical to either of these calculations. Rather, it was the date which appears to have been selected solely for administrative convenience.

 The contract, in Section 4 of Article XII, provided for vacation pay in lieu of vacation in a number of situations where employment terminated before the end of the year (release, resignation, layoff, death and retirement). In each of these instances it is clear that a former employee who was no longer an employee on December 31st would be entitled to vacation benefits. These provisions are inconsistent with the position that employment on December 31st was an absolute requirement for vacation benefits. Since the striking employees were not making a "proffer of continued performance" we do not hold that they qualify for vacation pay under the lay-off provisions of Section 4d. of Article XII. It is our holding, rather, that the eligibility date of December 31st is not a material part of the contract and that the employees are entitled to pro rata vacation pay in lieu of vacation as additional compensation under the agreement for services performed between January 1 and May 11, 1973 which became the "measuring year" as events transpired. We further hold that no employee is entitled to vacation pay based on time that he was technically an employee after May 11, 1973 but during which time he was performing no services as an employee. Schneider v. Electric Auto-Lite Co., *supra.* We attach no significance to the fact that the words "pro rata" were used in a previous contract and were eliminated in the 1971–1973 agreement.

The length of each employee's vacation will be determined by his number of years of continuous service as of May 11, 1973. The number of straight-time hours worked between January 1 and May 11, 1973 and the base rate of pay of

each eligible employee on May 11, 1973 will be used to determine the vacation pay to which he is entitled. Reference will be made to a master for determination of individual awards as provided in the stipulation of the parties.

Upon remand, the district court will determine whether the individual plaintiffs are proper representatives of a class consisting of the employees of defendant included in the bargaining unit at the Cookeville, Tennessee plant who are eligible under the terms of the agreement to receive vacation pay in lieu of vacation based on time worked after December 31, 1972. If the court concludes that such representation is proper and that other requirements of Rule 23, Fed.R. Civ.P., are met, it will certify this as a class action.

The judgment appealed from is reversed and the case is remanded to the district court for further proceedings in accordance with this opinion. Costs to the appellants.