ALLIED RAILING CORPORATION, INC., Plaintiff,

v.

SHOPMEN'S LOCAL UNION # 455 OF the INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL & ORNAMENTAL IRONWORKERS, (AFL-CIO), Defendants.

No. 76 Civ. 4103.

United States District Court, S. D. New York.

Nov. 11, 1976.

Patrick M. Campbell, New City, N. Y., for plaintiff.

Sipser, Weinstock, Harper, Dorn & Leibowitz, New York City, for defendant Shopmen's Local Union No. 455 of the International Association of Bridge, Structural and Ornamental Iron Workers, AFL–CIO.

## OPINION

WERKER, District Judge.

This is an action under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1970) in which plaintiff, Allied Railing Corporation (the "Company") seeks a declaratory judgment arising out of a collective bargaining agreement entered into on July 26, 1973 (the "Agreement") with the defendant, Shopmen's Local Union # 455, International Association of Bridge, Structural & Ornamental Ironworkers, AFL–CIO (the "Union").

Prior to the expiration of the Agreement no new collective bargaining agreement was reached and the contract was terminated by election of the Union as of June 30, 1975. Thereafter an eight month strike commenced, and the Company ultimately ceased operation of its business.

The dispute between the parties surrounds the alleged failure of the Company to make severance payments subsequent to the termination of the Agreement. In either November of 1975 or February of 1976,[1] the Company advised the Union that it was discontinuing its operations, at which point the Union demanded that the Company make severance payments. Upon the failure of the Company to do so, the Union submitted the dispute for arbitration on March 19, 1976.

The pleadings and the Agreement itself reflect that Allied and the Union have been parties to collective bargaining agreements for many years. The members of the Union have served as employees in production and maintenance roles for the Company. Specifically, Union members were engaged in the production of metal products and also in maintaining machinery or performing other maintenance functions in Company shops.

The relief sought in the complaint is a stay of the arbitration presently scheduled for November 12, 1976 and a declaration both that the Agreement was voluntarily terminated on June 30, 1975 and that Allied is not required to arbitrate grievances arising subsequent to the voluntary termination of the Agreement.

The Union has filed a cross-petition seeking the compelling of arbitration pursuant to section 4 of the United States Arbitration Act, 9 U.S.C. § 4 (1970), and simultaneously, a motion to dismiss the complaint and to compel arbitration of the dispute.

The provision concerning the payment of severance benefits calls in part for the payment of severance benefits upon the termination of the Company's operations or removal of its operations a certain distance.[2]

---

1. In its cross-petition the Union asserts it was notified in February of 1976. In its memorandum, however, it asserts that the date was November 8, 1975.

2. Section 31 provides as follows:
 SECTION 31. SEVERANCE PAY
 (A) Effective July 1, 1973 when a Company goes out of business (voluntary or invol-

untary) or moves its plant a distance of 50 miles or more from its then location, or sells its operation, or merges with another company at a location 50 miles or more from its then location, its employees who are terminated as a result thereof shall be entitled to one week's severance pay for each year of service with the Company. Service shall include the employee's total seniority as evi-

Whether or not there is an agreement to arbitrate is an issue for determination by the court, the duty to arbitrate being wholly contractual. 9 U.S.C. § 4. *John Wiley & Sons, Inc. v. Livington*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *International Association of Machinists v. Oxco Brush Division of Vistron Corp.*, 517 F.2d 239, 242 (6th Cir. 1975); *U.A.W. Local 125 v. International Telephone & Telegraph Corp.*, 508 F.2d 1309 (8th Cir. 1975); *Oil Chemical Workers Union v. American Maize Co.*, 492 F.2d 409 (7th Cir.), *cert. denied*, 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974); *Proctor & Gamble Independent Union v. Proctor & Gamble Manufacturing Co.*, 312 F.2d 181 (2d Cir. 1962). The right to severance pay cannot be termed "vested" unless the parties have agreed that such benefits would in fact vest. The Agreement provided in subdivision E of section 31 for the allocation of benefits between the Fund and the Company after the Company made contributions for two years even though the contract was for a two-year term. This alone, however, does not mean that the Company can be required to arbitrate disputes concerning severance pay subsequent to the termination of the Agreement. The Agreement fails to specify that the duty to arbitrate is preserved beyond the date of termination. In the absence of a specific provision of this kind the Company cannot be required to arbitrate at this point. *International Association of Machinists v. Oxco Brush Division of Vistron Corp., supra; Local 58, United Rubber Workers v. Sun Products Corp.*, 521 F.2d 1286, 1287 (6th Cir. 1975) (*per curiam*); *U.A.W. Local 125 v. International Telephone & Telegraph Corp., supra*, at 1312. In *Local 1251, U. A. W. v. Robertshaw Controls Co.*, 405 F.2d 29 (2d Cir. 1968 (*en banc*), the Second Circuit overruled an earlier decision, *Zdanok v. Glidden Co.*, 288 F.2d 99 (2d Cir. 1961), in which the court had held that seniority rights survived beyond the term of a collective bargaining

denced by the Company's then seniority rolls. However, no employee shall be entitled to any severance pay unless he has completed 1600 hours of work with the Company involved.

(B) The Company shall be responsible for making the above severance payments. It shall continue to be responsible for the full severance payments unless and until it has made contributions to the Local 455 Severance Pay Trust Fund provided for in Subsection (C) for a period of two years.

(C) Commencing July 1, 1973 and for the duration of this Agreement, the Company will pay 1% of the weekly payroll of all employees who are covered by this collective bargaining agreement employed by the Company, to a Joint Board of Trustees composed of an equal number of representatives from and named by the Union and an equal number of representatives named by Allied Building Metal Industries, Inc. and representing the Companies (members of the Association) and all other Employers with whom the Union has collective bargaining agreements. The contributions shall be applied by the said Board of Trustees to a pooled severance pay fund to be created under an appropriate Agreement and Declaration of Trust to be operated as the "Local 455 Severance Pay Trust Fund," for the purpose of establishing and paying severance pay in accordance with rules and regulations to be adopted by the Trustees, and for the organization and ad-

ministration of the Fund. The Fund and its rules and regulations shall be established in conformity with all requirements of law and shall be submitted to the Treasury Department for approval as a qualified plan. The above contribution of 1% is the only contribution which the Company is required to make to the Fund.

(D) The Company shall make payments in full hereunder not later than the tenth (10th) day of each month following the month in which contributions are due.

(E) After a Company has made contributions to the Fund for a period of two (2) years, the Fund shall be liable to make severance payments where employees are entitled thereto, in an amount which is equal to the Company's obligation but in no event greater than five (5) times the amount contributed by the Company to the Fund, and the Company shall be responsible to pay the balance of the severance pay due, if any, directly to the employees.

(F) The Trustees will formulate a Rule which will modify or alleviate the obligations of a Company to continue payments to the Fund where in the opinion of the Trustees, the Company has made contributions to the Fund sufficient to secure its employees' severance pay.

(G) A Rule will be formulated covering the severance rights of employees who are eligible to apply for full pension benefits.

agreement. The Second Circuit's statement in *Robertshaw* in regard to seniority rights is apposite here as well:

> "Seniority is wholly a creation of the collective agreement and does not exist apart from that agreement."

*Id.* at 33. This thought was restated by the Second Circuit in *Printing Specialties Local 447 v. Pride Papers Aaronson Bros. Paper Corp.*, 445 F.2d 361, 363 (2d Cir.) *cert. denied*, 404 U.S. 1001, 92 S.Ct. 564, 30 L.Ed.2d 553 (1971) where the court declared that:

> "[A] contention, based on the supposition that contractual obligations somehow survived termination of the contract, would be unavailing in the light of our opinion in *[Robertshaw]* overruling *[Zdanok].*" [Citations omitted.]

The Union's reliance on the Fourth Circuit's decision in *Local 358, Bakery Workers v. Nolde Brothers, Inc.*, 530 F.2d 548 (4th Cir. 1975), *cert. granted*, 425 U.S. 970, 96 S.Ct. 2165, 48 L.Ed.2d 793 (1976) does not strengthen its position. In *Nolde* the court determined that where a union has "accruable" rights such as severance pay benefits, and there is an agreement to arbitrate disputes concerning such benefits under the collective bargaining agreement, that the duty to arbitrate survives even after the term of the agreement. The *Nolde* court in support of its decision relied extensively on the Supreme Court's *per curiam* reversal of the circuit court opinion reversing the district court decision in *Piano Workers Union v. W. W. Kimball Co.*, 221 F.Supp. 461 (N.D. Ill.1963), *rev'd*, 333 F.2d 761 (7th Cir.), *rev'd*, 379 U.S. 357, 85 S.Ct. 441, 13 L.Ed.2d 541 (1964). In so doing, the Fourth Circuit misconstrued the significance of the *W. W. Kimball Co.* case. In the original *W. W. Kimball Co.* district court opinion, although operations in a new plant had begun several days after the expiration of the collective bargaining agreement, the district court directed that arbitration proceed as to whether or not the dispute between the parties concerning re-employment rights was arbitrable. The original opinion of the district court, its opinion after remand from the Supreme Court, the circuit court opinion

and the Supreme Court's reference to *John Wiley & Sons, Inc., supra* reveal that the *per curiam* Supreme Court opinion necessarily resolved the issues raised by a determination that the dispute in question had in fact arisen during the term of the contract (see in particular 239 F.Supp. 523 at 524 where the actual question which was presented for decision by the Supreme Court is set out). *See International Association of Machinists v. Oxco Brush Division of Vistron Corp., supra* at 243. The *Nolde* court's conclusion that the company had to abide by the agreement even after the contract embodying it had terminated is without foundation. I find similarly unpersuasive the decision of the Third Circuit in *Local 595, International Association of Machinists v. Howe Sound Co.*, 350 F.2d 508 (3d Cir. 1965), where the Third Circuit similarly held that a company's obligation to arbitrate survived the expiration of the collective bargaining agreement. The Third Circuit also misinterpreted *W. W. Kimball Co.* in attempting to rely on that decision. *Nolde* and *Howe* are in any event inconsistent with the position of the Second Circuit. In *Proctor & Gamble Independent Union v. Proctor & Gamble Manufacturing Co., supra*, the Second Circuit held that a company's duty to arbitrate a dispute which arose subsequent to the termination of one collective bargaining agreement and prior to the effective date of a new one did not survive the arbitration agreement. The Second Circuit has consistently followed this line of reasoning. *Local 1251, U. A. W. v. Robertshaw Controls Co., supra; Printing Specialties Local 447 v. Pride Papers Aaronson Bros. Paper Corp., supra. See also, Oil Chemical Workers Union v. American Maize Co., supra*, an opinion of the Seventh Circuit which is consistent with holdings of the Second Circuit.

There is no indication whatever in the arbitration clause that the parties agreed to arbitrate a dispute arising subsequent to the termination of the Agreement. The arbitration clause reads as follows:

> "[A]ny difference or dispute between the Company and the Union arising out of this Agreement or as to the meaning,

application or alleged violation of any provision, or provisions of this Agreement shall, upon, request of either part, to this Agreement be submitted to an Arbitrator designated by the American Arbitration Association, in accordance with its rules and regulations."

Absent the indication of consent in the Agreement to arbitration subsequent to its termination, the Company cannot be held to arbitration by operation of law:

"For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960).

■ The only issue remaining is whether or not the Union's statement that "rumors" existed during the life of the Agreement to the effect that the Company had determined to terminate operations is sufficient to raise an issue of fact as to whether or not the dispute actually arose during the term of the Agreement. If in fact the dispute arose during the term of the Agreement, the dispute concerning severance pay would be arbitrable. *International Association of Machinists v. Oxco Brush Division of Vistron Corp., supra* at 243.

The Union draws the court's attention to the fact that the term "going out of business" is defined in Rule (1)(B) of the Rules and Regulations of the Severance Pay Trust Fund (the "Fund") to be the time when an employer determines to take such action and takes steps to implement that determination. Based on this definition, the Union contends that the Company may in fact have gone out of business prior to the termination of the Agreement.

The definition contained in the Rules and Regulations of the Fund is not by its terms applicable to the payment of severance benefits by the Company but only to the payment of benefits by the Fund. Moreover, even if the definition were applicable to the payment of benefits by the Company, the mere allegation of the existence of unspecified rumors without any further informa-

tion as to the nature or source of the alleged rumors is insufficient to raise an issue of fact with respect to whether or not operations terminated during the term of the Agreement. In section (1)(B) of the Rules and Regulations, the trustees of the Fund are directed to look to the Company's entire course of conduct in making the determination that the Company has gone out of business. The items which the trustees are directed to consider (although not exclusively) are, for example, discontinuing bidding for new work, breaking leases, selling substantial amounts of machinery, discontinuing the giving of estimates and the discontinuing of soliciting work. If there were examples as to actions or inactions of this kind by the Company, the Union could have so alleged. No such allegations, however, appear in the Union's papers.

No direction to compel arbitration will be entered and the cross-petition to compel arbitration is therefore dismissed. The plaintiff Company is entitled to a declaration that it has no obligation to arbitrate grievances under the Agreement and that the Agreement was voluntarily terminated as of June 30, 1975.

SO ORDERED.