**UNITED MINE WORKERS OF AMERICA, Plaintiff,**

v.

**JERICOL MINING, INC., Defendant.**

**Civ. A. No. 78–112.**

United States District Court,
E. D. Kentucky,
London Division.

April 28, 1980.

John B. Rayson, Knoxville, Tenn., H. B. Noble, Hazard, Ky., Harrison Combs, Washington, D. C., for plaintiff.

Timothy A. Garry, Cincinnati, Ohio, for defendant.

## MEMORANDUM

SILER, District Judge.

This is an action brought by the United Mine Workers of America (UMWA) as the collective bargaining representative of approximately 150 production and maintenance workers who are employed by the defendant Jericol Mining, Inc. at its operation in Holmes Mill, Harlan County, Kentucky. The plaintiff seeks one of two forms of relief:

1. An order requiring the defendant Jericol to process a vacation pay disagreement under the contractual dispute resolution procedure of the National Bituminous Coal Wage Agreement of 1974 (the 1974 Agreement), or

2. A resolution by this Court of the merits of the underlying vacation pay disagreement.

For the reasons set forth below, the Court finds the first form of relief appropriate in this case.

This Court has jurisdiction under Section 301 of the National Labor Relations Act, 29 U.S.C. § 185. The defendant concedes that the UMWA has standing to bring this action on behalf of the employees it repre-sents. It further concedes that a recent change in name by the defendant corporation (from "Shackleford Coal Company" to the present "Jericol Mining Company") has not affected any substantive right of the parties under the 1974 Agreement.

The 1974 Agreement expired on December 7, 1977. After a lengthy strike, a new contract was negotiated and signed by the UMWA and other coal companies, but not by Jericol. The strike against Jericol continued. In 1978, during June (the month in which mine employee vacations traditionally begin) the UMWA made a demand upon Jericol for vacation pay which the UMWA alleged had accrued under Article XIII of the expired 1974 Agreement between July, 1977, and December, 1977, a period in which the 1974 Agreement had still been in force. Jericol refused to pay the accrued vacation pay, denying that it was obligated under the 1974 Agreement. Jericol pointed out that the 1974 Agreement contained no explicit mention of any 1978 date in connection with vacation pay. Furthermore, Jericol refused to process the resulting dispute through the grievance process and binding arbitration procedures outlined in Article XXIII of the 1974 Agreement.

Jericol did not and does not deny that the vacation pay dispute would have been subject to the grievance and arbitration process if it had arisen during the term of the 1974 Agreement. Its basic contention is that there is no duty to entertain and process grievances that are filed after the expiration of the collective bargaining agreement.

The UMWA acknowledges that several Sixth Circuit cases seem to support this position of Jericol on the question of post-expiration arbitrability: *Local 58, Rubber Workers v. Sun Products Corp.*, 521 F.2d 1286 (6th Cir. 1975); *International Association of Machinists, Local 2369 v. Oxco Brush Division*, 517 F.2d 239 (6th Cir. 1975); and *Local Union No. 998, U.A.W. v. B & T Metals Co.*, 315 F.2d 432 (6th Cir. 1963). In all these cases, the Court of Appeals held that where a dispute did not arise while the collective bargaining agreement was in force, the Union was not entitled to compulsory arbitration.

However, the UMWA asserts that the subsequent Supreme Court decision in *Nolde Brothers, Inc. v. Bakery Workers*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), supercedes these Sixth Circuit decisions, overruling them to the extent they are inconsistent with it.

In *Nolde*, shortly after the termination of the collective bargaining agreement, the company closed down its plant. The company then paid its former employees wages and vacation pay which had accrued under the old agreement. However, the company rejected the union's demand for severance pay which had accrued under the expired collective bargaining agreement, and declined to arbitrate the severance pay claim, arguing that its contractual obligation to arbitrate disputes ended at the same time that the collective bargaining agreement terminated. The United States Supreme Court rejected this argument, holding that the severance pay dispute was subject to compulsory arbitration:

> As the parties' arguments demonstrate, both the Union's claim for severance pay and Nolde's refusal to pay the same are based on their differing perceptions of a provision of the expired collective-bargaining agreement. The parties may have intended, as Nolde maintained, that any substantive claim to severance pay must surface, if at all, during the contract's term. However, there is also "no reason why parties could not if they so chose agree to the accrual of rights during the term of an agreement and their realization after the agreement had expired." *John Wiley & Sons v. Livingston*, 376 U.S. 543, 555, 84 S.Ct. 909, 917, 11 L.Ed.2d 898 (1964). Of course, in determining the arbitrability of the dispute, the merits of the underlying claim for severance pay are not before us. However, it is clear that, whatever the outcome, the resolution of that claim hinges on the interpretation ultimately given the contract clause providing for severance pay. The dispute therefore, although arising *after* the expiration of the collective-bargaining contract, clearly arises *under* that contract.

430 U.S. at 249, 97 S.Ct. at 1071 (footnote omitted; emphasis in original).

■ The same reasoning applies to the case at bar. The UMWA is claiming vacation pay benefits which allegedly accrued under a provision of the expired 1974 Agreement. Although this dispute did not arise until *after* the expiration of the contract when the UMWA made its demand at the traditional vacation period in June, 1978, it is clear that the dispute *arose under* that contract. The Supreme Court in *Nolde* went on to point out:

> While the termination of the collective-bargaining agreement works an obvious change in the relationship between employer and union, it would have little impact on many of the considerations behind their decision to resolve their contractual differences through arbitration. The contracting parties' confidence in the arbitration process and an arbitrator's presumed special competence in matters concerning bargaining agreements does not terminate with the contract. Nor would their interest in obtaining a prompt and inexpensive resolution of their disputes by an expert tribunal. Hence, there is little reason to construe this contract to mean that the parties intended their contractual duty to submit grievances and claims arising under the contract to terminate immediately on the termination of the contract; the alternative remedy of a lawsuit is the very remedy the arbitration clause was designed to avoid.

> It is also noteworthy that the parties drafted their broad arbitration clause against a backdrop of well-established federal labor policy favoring arbitration as the means of resolving disputes over the meaning and effect of collective-bargaining agreements. Congress has expressly stated:

> "Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C. § 173(d).

The parties must be deemed to have been conscious of this policy when they agreed to resolve their contractual differences through arbitration. Consequently, the parties' failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship. In short, where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication.

430 U.S. at 254–55, 97 S.Ct. at 1973–1974.

■ This is a dispute over the vacation pay provisions (Article XIII) of the expired 1974 Agreement. Thus, there is a presumption favoring arbitrability. The contract contained no express negation of this presumption. Jericol argues, however, that an implied negation of the presumption of arbitrability is found in the fact that the UMWA chose to include a specific provision in the new 1978 Wage Agreement covering vacation pay for the period in question. Although it is not a signatory of the 1978 Agreement, Jericol argues that by including an explicit provision for July through December, 1977, vacation pay in its new 1978 contract with other coal companies, the UMWA has implicitly admitted that the 1974 Agreement did not provide for vacation pay for the period in question. Jericol argues that the UMWA's decision to include this matter as part of a new contract negates the presumption that the parties must have originally intended arbitration. A careful consideration of this argument reveals its basic infirmity. Whatever the UMWA may or may not have agreed to in a subsequent 1978 contract with third parties is not useful in a determination of what the UMWA and Jericol agreed to in 1974. Therefore, this 1978 action by the UMWA is insufficient to negate the presumption of arbitrability. Jericol may argue to the arbitrator that the 1978 agreement UMWA signed with other coal companies is in some way relevant to the merits of the vacation pay dispute, but it is of no relevance in deciding the issue of arbitrability under the 1974 Agreement, with which this Court is solely concerned.

■ Because the *Nolde* case is so factually similar to the case at bar, it is controlling here unless it can be distinguished. Jericol attempts to do this by arguing that in *Nolde* the Union asserted its grievance more promptly than in the present case. The grievance in *Nolde* was filed four days after the termination of the collective bargaining agreement, while in the case at bar, the UMWA did not attempt to present its claim until almost seven months after the contract had expired. At first blush, this factor would seem to militate strongly against the UMWA position, especially since the Court in *Nolde* indicated that its opinion would not apply to a situation in which a post-termination claim was "not asserted within a reasonable time." 430 U.S. at 255, n.8, 97 S.Ct. at 1074. However, a closer look at the facts of this case makes it clear that the UMWA did assert its claim "within a reasonable time," as the Supreme Court used that phrase in *Nolde*. Although under Article XIII of the 1974 Agreement, vacation pay accrued during the work year, Section (f) of Article XIII makes it clear that the parties anticipated that vacation pay would normally be payable shortly before the regular June-July vacation period. This is when the UMWA made its claim. The UMWA was not required to anticipate in December that its timely June claim would be rejected by Jericol. Just as in *Nolde*, the party asserting the grievance acted with due diligence on learning of the grievance.

■ Whether the grievance was "untimely" in the sense of Article XXIII, section (d) of the 1974 Agreement is an altogether different question. Article XXIII, section (d) provides that a grievance not filed "within fifteen calendar days of the time when the Employee reasonably should have known of it" is "untimely." This is a matter of "procedural arbitrability," which is to be left for resolution by the arbitrator un-

der federal law. *John Wiley & Sons v. Livingston*, 376 U.S. 543 at 557, 84 S.Ct. 909 at 918, 11 L.Ed.2d 898 (1964); *Local 748, Electrical Workers v. Jefferson City Cabinet Co.*, 314 F.2d 192 (6th Cir. 1963), *cert. denied*, 377 U.S. 904, 84 S.Ct. 1162, 12 L.Ed.2d 175 (1964).

■ Jericol also seeks to distinguish the *Nolde* case by use of a "vesting" argument. In *Nolde*, the right to severance pay could only arise and be asserted after the employer/employee relation was "severed." Thus, that right did not "vest" until after the termination of the contract. Jericol argues that in the case at bar the employees' interest in vacation pay vested, if at all, prior to the expiration of the 1974 contract. Thus, while the grievance in *Nolde* could only have been presented after the contract's termination, Jericol asserts that the grievance in this case could and should have been presented before the 1974 Agreement's termination. This distinction is not persuasive. The Supreme Court's *Nolde* opinion was not based on notions of "vesting." In any event, while the rights to the vacation pay in question may have "vested" during the period from July, 1977, to December, 1977, it is apparent, as pointed out above, that the parties did not anticipate the vacation pay would normally be payable until the start of the next regular vacation period in June of the following year. Regardless of any abstract "vesting," the UMWA made its demand at the time when the claimed vacation pay would logically have been due, and this was sufficient.

■ The parties considered vacation pay a form of deferred compensation. The amount of vacation pay was dependent on the length of employment and the amount of regular pay, as was the severance pay in *Nolde*. See 430 U.S. at 248–49, 97 S.Ct. at 1070. This conclusion is reinforced by a clause of the collective bargaining agreement, Article XIII, section (d)(4), which provides: "Pro rata payments of regular vacation for the months they are on the payroll shall be provided for those Employees who are given employment or who leave their employment during the qualifying pe-

riod." This is in accord with the Sixth Circuit Court of Appeals' holding that vacation pay is merely a form of deferred compensation for services already performed. See *Local 58, Rubber Workers v. Sun Products Corp.*, 521 F.2d 1286 (6th Cir. 1975), and cases cited therein. To make benefits due under a contract payable only after the expiration of the contract is perfectly acceptable, as the Supreme Court has acknowledged. *See, e. g., John Wiley & Sons v. Livingston*, 376 U.S. 543, 555, 84 S.Ct. 909, 917, 11 L.Ed.2d 898 (1964). The UMWA contends that this is exactly what the parties in fact agreed to, and it is clear that this is a question fairly left for resolution by the arbitration process. *Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 566, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403 (1960).

An argument could be made, based on the pre-*Nolde* Sixth Circuit cases dealing with vacation pay under a terminated collective bargaining agreement, including *Local 58, United Rubber Workers v. Sun Products Corp.*, 521 F.2d 1286 (6th Cir. 1975), and *International Association of Machinists, Local 2369 v. Oxco Brush Division*, 517 F.2d 239 (6th Cir. 1975), that the substantive issue here is so clear-cut that this Court should go ahead and issue a decision on the merits in favor of the UMWA. The UMWA has not strongly pressed for this relief in its memoranda, and in any event, it is the opinion of this Court that the Supreme Court's subsequent *Nolde* decision indicates arbitration is the preferred method of resolving such disputes. As the Supreme Court directed in the *Nolde* opinion, " '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " 430 U.S. at 255, 97 S.Ct. at 1074, quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960).

Therefore, nothing herein should be construed as an opinion on the merits of the

underlying vacation pay dispute. *Nolde Brothers, Inc. v. Bakery Workers*, 430 U.S. 243, 249, 97 S.Ct. 1067, 1070, 51 L.Ed.2d 300 (1977). These questions are matters for the arbitrator's judgment. *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).